IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 09 CR 144-10 |
| v. | ) | |
| | ) | |
| FRANKLIN NOVAK, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Franklin Novak ("Novak") is charged with conspiracy, wire fraud, and mail fraud stemming from his alleged participation in a scheme to submit more than 4,000 fraudulent state and federal tax returns. The issue before the Court is whether Novak is competent to stand trial for his alleged crimes. For the reasons set forth below, the Court concludes that he is.

### I. BACKGROUND

On August 4, 2009, Novak was charged in a Superseding Indictment with conspiracy to disrupt the functioning of the Internal Revenue Service ("IRS") and to defraud the IRS and state revenue agencies through a mail and wire fraud scheme. (Doc. 16). Novak was also charged with multiple counts of mail and wire fraud committed in furtherance of the alleged conspiracy and scheme. Following his extradition from Israel, Novak was arraigned before this Court on June 13, 2011. (Doc. 456).

On September 20, 2011, Novak's attorneys raised a concern that Novak was mentally incompetent to stand trial. They moved the Court to order a psychological examination of Novak, pursuant 18 U.S.C. § 4241(a), to determine his competency. (Doc. 513). The Court

granted this motion and appointed Dr. Richard Crane, the defendant's chosen expert, to conduct this initial competency evaluation. (Doc. 528).

After conducting his examination, Dr. Crane diagnosed Novak with schizophrenia. (4/12/12 Tr. 86:24; Def. Ex. 2.) Dr. Crane's diagnosis was based on his observation that Novak suffered from delusions, sometimes bizarre delusions, loose associations and negative symptoms like flat affect.[1] (4/12/12 Tr. 87:5-25, 114:5-11; Def. Ex. 2.) Based on this diagnosis, Dr. Crane concluded that although Novak understood the nature of the criminal proceedings against him, he was incapable of participating in his defense of the case. Specifically, Dr. Crane found that Novak's schizophrenia made him incapable of engaging in abstract reasoning. (4/12/12 Tr.98:24; Def. Ex. 2.) This, according to Dr. Crane, inhibits Novak's ability to explain to his attorneys why he committed various acts. Dr. Crane also found that the schizophrenia prevents Novak from rationally evaluating his situation and making strategic choices concerning his case. (4/12/12 Tr.99:24-100:16; Def. Ex. 2.)

Subsequently, the government moved for an examination of Novak by a psychologist from the Federal Bureau of Prisons. The Court granted this motion. (Doc. 552). After examining Novak, Dr. David Szyhowski concluded that Novak did not have schizophrenia and was competent to stand trial. (4/12/12 Tr.40:15-22; Gov't. Szyhowski Ex., 8-9.) Dr. Szyhowski found that Novak suffered from an adjustment disorder with anxiety, chronic but concluded that this condition did not render Novak incapable of participating in his defense of the case. (4/12/12 Tr.38:22-40:22; Gov't Szyhowski Ex., 7.) Dr. Szyhowski found that Novak understood

---

[1]The Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition states that the characteristic symptoms of schizophrenia are two or more of the following: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, and negative symptoms. See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR),* 312 (4th ed. 2000).

the charges against him, the roles of the people in the courtroom, and the penalties that he faced. (4/12/12 Tr.30:16-31:18.) He concluded that Novak had an understanding of the nuances of the legal system and the ability to advocate for himself. *Id.* For example, he was able to compare his legal situation to that of his co-defendants (4/12/12 Tr.31:19-32:14), and explained that he contested his extradition from Israel based upon his desire to ensure that he could serve his sentence their. (4/12/12 Tr.33:12-34:10.) He was also able to describe the role of the defense attorney, his relationship with his attorney, and his understanding of what he needed to do in order to assist his attorney. (4/12/12 Tr.34-15-35:6.)

The Court held a competency hearing on April 12, 2012, pursuant to 18 U.S.C. § 4241(a), to assist it in determining whether Novak is competent to stand trial. At the hearing, Drs. Szyhowski and Crane testified as to their conclusions. The government also played a recording of a November 18, 2011 telephone call placed by Novak from the Metropolitan Correctional Center ("MCC") to a friend. (4/12/12 Tr.4:19-6:19; *see also* Gov't Ex. 1 [recording]; Gov't Ex. 1A [call transcript].) On the recording, Novak analogized his attempt to convince the Court that he suffers from schizophrenia to a story in Psalms where King David faked insanity when he was captured by the Philistines. (Gov't Ex. 1; 1A.) Novak opined that, like King David, he could obtain his release if the Court finds him incompetent. During the conversation, Novak compared the benefits of being declared incompetent, avoiding trial and receiving treatment at a psychiatric hospital to "tak[ing] [his] chances with the Court again." (Gov't Ex. 1; 1A.) The recording also captured Novak laughing and joking that his wife would not be able to "put up" with him after he receives the drugs prescribed in the psychiatric hospital. (Gov't Ex. 1; 1A.)

At the conclusion of the hearing, the government asked to supplement the record with additional recordings of Novak's telephone conversations. (4/12/12 Tr.192:16-17.) Novak did not object but asked to be able to challenge the supplemental evidence after his expert reviewed it. (4/12/12 Tr.194:10-15.) The Court agreed and continued the hearing. The government provided recordings of six telephone calls made by Novak. Novak then submitted transcripts of fourteen telephone recordings. At the June 4, 2012 continuation of the hearing, Novak called Dr. Crane again. Dr. Crane provided additional testimony regarding Novak's fourteen exhibits and how they supported his conclusion that Novak was schizophrenic and incompetent to stand trial.

## II. LEGAL STANDARD

A defendant must be mentally competent to stand trial. *See Burt v. Uchtman,* 422 F.3d 557, 564 (7th Cir. 2005) (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). 18 U.S.C. §4241(d) provides, in pertinent part, that if, after a competency hearing:

> [T]he court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

A defendant is deemed incompetent if he fails to demonstrate either a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational and factual understanding of the proceedings against him. 18 U.S.C. § 4241(a); *see United States v. Ross*, 510 F.3d 702, 712 (7th Cir. 2007) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005)).

Mental illness alone does not constitute incompetence. *Price v. Thurmer*, 637 F.3d 831, 833 (7th Cir. 2011). A defendant is competent to stand trial when he is "able to follow the proceedings and provide the information that his lawyer needs in order to conduct an adequate defense, and to participate in certain critical decisions, such as whether to appeal." *Price*, 637 F.3d at 833-34. The court may find a defendant competent despite a mental health expert's conclusion to the contrary. *See Holmes v. Buss*, 506 F.3d 576, 581 (7th Cir. 2007) (citing *Matheney v. Anderson*, 377 F.3d 740, 748-49 (7th Cir. 2004); *United States v. Bennett*, 908 F.2d 189, 195 (7th Cir. 1990)). In reaching a decision, the court may consider expert testimony, the defendant's statements and any other evidence in the record. *See Matheny,* 377 F. 3d at 748. The parties agree that the government bears the burden of proving Novak's competence.

**III. DISCUSSION**

The Court finds that the government has met its burden and Novak is competent to stand trial. Both doctors agree that Novak is able to understand the nature of the criminal proceedings against him. The sole point of contention is whether Novak is able to assist his attorneys in his own defense.

Novak's assertion that he is unable to assist his attorneys rests entirely on Dr. Crane's conclusions that: (1) Novak is incapable of the abstract thought required to explain to his counsel why he committed certain acts; and (2) Novak has delusional beliefs regarding the applicability of United States laws, the ability of Israel to intervene on his behalf and the ability of God to

come to his aid. Dr. Crane believes these "delusions" prevent Novak from rationally evaluating his legal choices. Dr. Crane's conclusions are not supported by the evidence.

The telephone recordings of Novak demonstrate that he is capable of abstract thinking. For example, in the November 18, 2011 conversation between Novak and his friend, Novak analogized his scheme to be declared incompetent and committed to psychiatric hospital to Psalms when King David "faked insanity to the Philistines when he got captured...and they figured he was so crazy they let him go." (Gov't Ex. 1A.) On examination by the Court, Dr. Crane conceded that this recording showed Novak could engage in abstract thought. (4/12/12 Tr.180:11-181:20.) Novak also joked and laughed about the possibility that he could be declared incompetent and not have to stand trial. (Gov't Ex. 1; 1A.) It is apparent from the tone and tenor of the call that Novak is capable of using abstract thought to assist his attorneys and that he has rationally decided on his course of action.

Even if Novak cannot think in the abstract, he can still sufficiently participate in his defense to stand trial. Dr. Crane conceded that Novak is capable of relating the facts underlying his participation in the alleged fraud to his attorneys. (4/12/12 Tr.108:16-109:7.) Novak does not dispute that he is able to understand the role of his attorneys and the nature of the proceedings against him. This alone is sufficient to establish his competence. *See Matheny,* 377 F. 3d at 748-49 (Finding defendant competent to assist in the preparation of his defense, despite the conclusion of the sole medical expert to the contrary, because the defendant "was able to understand the role of his attorneys, that he understood the nature of the proceedings against

6

him, and that he could factually describe the events of the day he killed his ex-wife.").

Accordingly, Novak is sufficiently able to assist in his defense to stand trial.[2]

The evidence also demonstrates that Novak is capable of rationally evaluating his legal

choices. For example, Novak considered the benefits and risks of being declared incompetent

and committed to a psychiatric hospital versus standing trial and potentially receiving a five-year

sentence in the November 18, 2011 telephone recording. (Gov't Ex. 1; 1A.) He stated:

> Okay, so it has a lot to do with am I willing to spend four months in a psychiatric
> hospital and hold on to my beliefs that Hashem is going to save me. And then
> that means that they will just release because I am not harming anybody, but I am,
> you know, I would be too crazy to stand trial. Or, go ahead and you know, you
> know, show that I am not schizophrenic and take my chances with the court
> again. Cause at this point the prosecution wants to put me away for five years.

(Gov't. Ex. 1A.) He then objectively analyzes whether a psychiatric hospital is superior to the

MCC by stating that he has heard that "the hospital conditions are a lot better than the prison

conditions. Except with...all the drugs the[y] mush your brain with." (Gov't Ex. 1A.)

This type of analysis is not limited to a single telephone call. Novak repeatedly

demonstrates an understanding of the circumstances of his case, the potential sentence he faces,

and the benefit that he may obtain if he is found incompetent. For example, in a December 4,

2011 telephone call, Novak explains the possible outcomes of his competency hearing as well as

the operation of the Sentencing Guidelines to his mother's caregiver. (Gov't Ex. 3; Def. Ex. 9.)

---

[2]Novak also asserts that his ability to give a factual description of his actions to his attorneys is insufficient to establish that he is able to assist in his defense for purposes of competency because he has been charged with a crime *malum prohibitum* and not a crime *malum in se*. The Court views this distinction with skepticism but need not address it because Novak is charged with fraud. Fraud is a crime *malum in se*. *See, e.g., Ruiz-Lopez v. Holder,* 682 F.3d 513, 519 (6th Cir. 2012); *Hyder v. Keisler,* 506 F.3d 388, 391 (5th Cir. 2007); *cf Orlando v. Robinson,* 262 F.2d 850,851 (7th Cir. 1959) ("Larceny or theft is a crime malum in se. All crimes mala in se involve moral turpitude.").

In a March 18, 2012 telephone call, Novak further explains that all he wants is for the psychiatrist and psychologist "to be able to say that I had no criminal intention." (Gov't. Ex. 6.)

The statements identified by Dr. Crane do not suggest that Novak is incapable of rationally evaluating his case. For example, while Novak may believe that the United States does not have authority to prosecute him, that has not stopped him from mounting a vigorous legal defense within the confines of the court system. His belief that the United States should not be able to prosecute him because he is an Israeli citizen is analogous to a tax protester who believes that taxes are voluntary. In truth, his codefendants set forth challenges to this Court's jurisdiction regarding the searches and interviews that took place in Israel, and as such, they essentially were asserting that the United States government could not gather the incriminating evidence against them and use it here to prosecute them. The arguments were briefed and argued. Although the Court rejected them, they were not rejected because they were fantastical assertions, but rather because they failed on the facts and the law. Having a legal position that may be untenable is not an indication of incompetence. *See U.S. v. James,* 328 F.3d 953, 955 (7th Cir. 2003) ("Many litigants articulate beliefs that have no legal support...Sometimes these beliefs are sincerely held, sometimes they are advanced only to annoy the other side, but in neither event do they imply mental instability or concrete intellect so deficient that trial is impossible."); *Matheny,* 377 F.3d at 748.[3]

---

[3]Dr. Szyhowski also testified that such a belief is not delusional and, is in fact, commonly held in prison populations such as at the MCC. (4/12/12 Tr.68:14-69:20.) Dr. Szyhowski testified the because those who subscribed to those belief beliefs were proceeding in a rational manner, through legal research and legal filing, the "sovereign citizen" defense was not delusional. (4/12/12 Tr. 69:2-71:6.)

Similarly, Novak's belief that the Israeli government may intervene on his behalf does not indicate that Novak is mentally incompetent. The November 18, 2011 telephone recording shows that Novak is acquainted with a man who purportedly lives next door to the Israeli Justice Minister. (Gov't Ex. 1; 1A.) Novak's belief that the Israeli government may intervene on his behalf is the product of optimistically believing that his acquaintance can convince the Justice Minister to assist him. It is another illustration of Novak's ability to rationally assess his case and consider additional legal avenues to pursue. In any case involving extradition, the concept of another state intervening is not fantastical but rather a realistic analysis of the framework of extradition cases. Even if the likelihood of success is small, it does not demonstrate a mental instability that renders Novak unfit to stand trial.

Novak's belief that God will assure a favorable outcome for him does not prevent Novak from making rational decisions regarding his defense. When Dr. Szyhowksi explored this belief with Novak, Dr. Szyhowski concluded that Novak was not delusional because Novak explained that he did not believe that God would literally intervene in the case; rather, it was an optimistic belief that everything would work out in the end due to God's plan. (4/12/12 Tr.49:8-50:2.) A belief that a higher religious being plays a part in a man's life does not render the believer incapable of participating in the legal process. If that were the case, the court houses would be emptied of all defendants who hold any religious belief in a higher power.

The remainder of Novak's arguments are unpersuasive. Novak contends that he is schizophrenic, and therefore incompetent, because Dr. Crane observed that Novak made loose

associations and had flat affect. However, these observations are contradicted by Novak's own statements and Dr. Szyhowski's conclusions.

According to Dr. Crane, a loose association is "when you're talking about a topic and introduce totally irrelevant material that doesn't make sense." (4/12/12 Tr.88:11-88:13.) Dr. Crane identified two examples of loose associations made by Novak: (1) Novak's response to the proverb "a rolling stone gathers no moss," which was to indicate that the stone was wet, like the Bob Dylan song (4/12/12 Tr.161:7-11); and (2) Novak's conclusion that apples and oranges are similar because they both have seeds and water. (4/12/12 Tr.104:21-105:3.) However, Dr. Crane never asked Novak for an explanation of his statements. Conversely, when Novak expressed an odd verbalization, Dr, Szyhowksi inquired as to Novak's meaning and would receive a rational explanation. (4/12/12 Tr.42:14-24.) For example, when Dr. Szyhowski asked Novak for an explanation of his statement that his father told him the he was not part of this planet, Novak explained that he meant that his father was telling him that was a dreamer, rather than that Novak actually believed that he was from another planet. *Id.*

Dr. Crane also cited Novak's "flattening of affect" as a symptom of schizophrenia. (4/12/12 Tr.87:21; 103:9-104:11; 106:9-12; 114:4.) Dr. Crane testified that "when Novak talks about different topics, his emotional response is always even. There's not an appropriate expression of sadness, anger." (4/12/12 Tr.103:9-13.) This observation is contradicted by Novak's recorded telephone conversations. For example, Novak jokes and laughs in his November 18, 2011 call with his friend. (Gov't Ex. 1; 1A.) In other recorded conversations

between Novak and his wife, Novak exhibits affection for his wife and expresses appropriate concern for her well-being. (*See, e.g.,*Gov't Ex. 5.) In his appearances before the Court, Novak displays an array of differing presentations including being congenial, irritated, and cooperative – all at times that seem perfectly appropriate to the matters being discussed in court at that moment.

Finally, Novak argues that it would be improper for the Court to find him competent to stand trial based on a review of his telephone conversations and the opinion of a psychologist when his expert, a psychiatrist, has concluded that he is incompetent due to schizophrenia. This argument has been rejected by the Seventh Circuit. *See Benefiel v. Davis,* 357 F. 3d 655, 660 (7th Cir. 2004) (affirming trial judge's assessment that petitioner was competent despite lone expert testimony in petitioner's favor); *Matheney,* 377 F. 3d at 748 (affirming trial judge's competency decision based on the evidence in the record despite the fact that the only medical expert to directly express a legal conclusion on defendant's competency, concluded that the defendant was incompetent); *see also United States v. Collins,* 949 F. 2d 921, 926 (7th Cir. 1991) (noting that the trial judge may consider the defendant's own statements in evaluating his competency). Indeed, the telephone recordings of Novak are the most lucid windows into his true mental state because it is during these conversations that he is most candid with the speaker on the other end.[4]

---

[4]Novak also analogizes his case to *Holmes v. Levenhagen*, 600 F.3d 756 (7th Cir. 2010). In *Holmes*, the Seventh Circuit held that the defendant should have been found incompetent because his schizophrenia was so severe that it prevented him from being lucid while discussing his case. *Id.* at 759. Novak's condition is nothing like that of the defendant's in *Holmes*. Novak's telephone conversations and interview with Dr. Szyhowski reveal an individual who is able to converse logically, describe his factual conduct and rationally assess his litigation options.

## IV. CONCLUSION

After reviewing the expert testimony of Drs. Crane and Szyhowski, considering Novak's recorded telephone conversations, and reviewing the parties' position papers, the Court finds that the government has proved that Novak is competent to stand trial by a preponderance of the evidence. For this reason, the Defendant's Motion under 18 U.S.C. § 4241(a) is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 4, 2012